UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| VICTORIA SIMS,<br>　　　　　　　　　　Plaintiff,<br>　v.<br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br>　　　　　　　　　　Defendant. | 3:14-cv-00682-MMD-VPC<br><br>**REPORT AND RECOMMENDATION**<br>**OF U.S. MAGISTRATE JUDGE** |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4. Before the court is plaintiff's motion for remand or reversal (#12), defendant's opposition and cross-motion to affirm (#13), and plaintiff's reply (#14). For the reasons set forth herein, the court recommends that plaintiff's motion be denied, and defendant's cross-motion be granted.

### I.　FACTUAL AND PROCEDURAL BACKGROUND

On August 23, 2011, Victoria Sims ("plaintiff") filed a claim for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act. (Administrative Record ("AR") 162–68.) Plaintiff initially alleged that her disability commenced on February 5, 2005 (*id.* at 243), but later amended the disability onset date to August 15, 2011 (*id.* at 183). The Social Security Administration denied plaintiff's application in the first instance on November 16, 2011, and upon reconsideration on August 31, 2012. (*Id.* at 103–06, 112–14.)

On May 31, 2013 plaintiff and her attorney appeared at a hearing before Administrative Law Judge ("ALJ") Janice Shave. (*Id.* at 43–91.) The ALJ issued a written decision on June 7, 2013, finding that plaintiff had not been disabled at any time between August 23, 2011, the date plaintiff filed her application, and the date of the decision. (*Id.* at 28–37.) Plaintiff appealed, and the Appeals Council denied review on October 31, 2014. (*Id.* at 1–4.) Accordingly, the ALJ's decision became the final decision of the Commissioner ("defendant").

1    Having exhausted all administrative remedies, plaintiff filed a complaint for judicial review on February 9, 2015 (#4). In her motion for remand or reversal, plaintiff contends that the ALJ erred in two respects: first, her assessment of plaintiff's credibility is unsupported by substantial evidence (#12 at 6–12); and second, she improperly discredited the medical opinion submitted by Dr. Derek Mito (*id.* at 12–15).

## II.   STANDARD OF REVIEW

The initial burden of proof to establish disability in a claim for SSI benefits rests upon the claimant. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). To satisfy this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

This court has jurisdiction to review an ALJ's decision to deny a claim for benefits after the claimant has exhausted all administrative remedies. *See Brewes v. Comm'r of Soc. Sec. Admin.*, 682 F.3d 1157, 1161–62 (9th Cir. 2012). The court must affirm the ALJ's decision unless it rests on legal error or is unsupported by substantial evidence in the administrative record. *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014); *see also* 42 U.S.C. § 405(g) ("findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive"). The substantial evidence standard is not onerous. It is "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

Although the ALJ need not discuss every piece of evidence in the record, she cannot ignore or omit evidence that is significant or probative. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012). The ALJ's discussion must adequately explain the decision in light of such evidence: "the ALJ, not the district court, is required to provide specific reasons for rejecting [the evidence.]" *Stout v. Comm'r, Soc. Sec. Admin*, 454 F.3d 1050, 1054 (9th Cir. 2006) (specifically discussing rejection of lay testimony). The district court's review is thus constrained to the reasons asserted by the ALJ. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

To determine whether substantial evidence exists, the court must look at the record as a whole, considering both evidence that supports and undermines the ALJ's decision. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). The court "may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Id.* (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). However, where evidence in the record "'is susceptible of more than one rational interpretation, the decision of the ALJ must be upheld.'" *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (quoting *Orteza v. Shalala*, 50 F.3d 748, 749 (9th Cir. 1995)). The ALJ alone is responsible for determining credibility and resolving ambiguities. *Garrison*, 759 F.3d at 1010.

### III.  DISCUSSION

**A.  SSI claims are evaluated under a five-step sequential process.**

The Commissioner follows a five-step sequential process for determining whether a claimant is "disabled" for the purposes SSI. 20 C.F.R. § 416.920(a)(4); *see also Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one directs the ALJ to determine whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. § 416.920(a)(4)(i). If so, the claimant is not disabled and the Commissioner denies the claim. *Id.* § 416.920(b). The second step requires the ALJ to determine whether the claimant's medically determinable impairment is "severe." *Id.* § 416.920(a)(4)(ii). "Severe" impairments are those that significantly limit the claimant's physical or mental ability to do basic work activities. *Id.* § 416.920(c). The Commissioner will deny the claim if the claimant lacks a severe impairment or combination of impairments. *Id.* In step three, the claimant's impairment is compared to the Agency's list of impairments. *Id.* § 416.920(a)(4)(iii); *see also id.* Pt. 404, Subpt. P, App. 1 ("List of Impairments"). The List of Impairments "define[s] impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990) (quoting 20 C.F.R. § 416.925(a)) (emphasis in original). Where the claimant's impairment is on the list, or is equivalent to a listed impairment, and the claimant also meets the corresponding durational requirement, the claimant is deemed disabled. 20 C.F.R. § 416.920(d).

3

If the Commissioner does not find disability at step three, review of the claim proceeds to step four. There, the ALJ considers whether the claimant can perform past relevant work despite the severe impairment. *Id*. § 416.920(a)(4)(iv). If so, the claimant is not disabled. *Id*. § 416.920(e). The ALJ will find that the claimant can return to past relevant work if he or she can perform the "actual functional demands and job duties of a particular past relevant job" or the "functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy." *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (quoting SSR 82-61, 1982 WL 31387 (Jan. 1, 1982)).

In making the step four determination, the ALJ considers the claimant's residual functional capacity ("RFC") and the physical and mental demands of the work previously performed. 20 C.F.R. § 416.9209(f); *see also Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). The RFC is the most the claimant can still do despite his or her limitations. 20 C.F.R. § 416.945(a)(1). In evaluating the claimant's RFC, the ALJ must assess all of the evidence, including medical reports and descriptions by the claimant and others of the claimant's relevant limitations. *See id*. § 416.945(a)(3). However, the ALJ is not required to accept as true every allegation the claimant offers regarding his or her limitations. *Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007). The ALJ must follow a two-step inquiry where the claimant alleges subjective pain or symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007); *see also* SSR 96-7p, 61 Fed. Reg. 34483 (July 2, 1996). First, the ALJ determines "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (citation and quotation omitted). Second, where the first test is met and no evidence suggests that the claimant is a malingerer, the ALJ may reject the claimant's allegations only by articulating "clear and convincing" reasons for doing so. *Id*.

The "clear and convincing" standard is the most demanding standard in Social Security case law, *Garrison*, 759 F.3d at 1015, and it requires that the ALJ "specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the

testimony."[1] *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001); *Brown-Hunter v. Colvin*, 798 F.3d 749, 755 (9th Cir. 2015) (holding that the ALJ "does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her [RFC]"). The ALJ must therefore cite to the record and discuss specific evidence therein. *See Vasquez v. Astrue*, 572 F.3d 586, 591–92 & n.1 (9th Cir. 2008); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993) (explaining that the ALJ must "point to specific facts in the record" to support a credibility finding). The focus, however, is ultimately upon the reviewing court. The credibility determination must be "sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (quoting *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001)); *Byrnes v. Shalala*, 60 F.3d 639, 642 (9th Cir. 1995); *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991).

Permissible bases for finding the claimant not credible include conflicts between the allegations and the claimant's daily activities, *Orn*, 495 F.3d at 636, an "unexplained or inadequately explained failure to seek treatment," *Molina*, 674 F.3d at 1112, and a lack of objective medical evidence, *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain [and limitations] testimony, it is a factor that the ALJ can consider in his [or her] credibility analysis."). Medical opinions are also probative evidence when weighing the credibility of subjective complaints. 20 C.F.R. § 416.929(c) (describing factors relevant to credibility); *see also Rollins*, 261 F.3d at 857 (noting that the ALJ appropriately considered medical opinions contradicting claimant's pain testimony in assessing claimant's credibility).

---

[1] Defendant maintains that the ALJ's credibility determination should be held to a "substantial evidence" standard. (#12 at 11–12.) As recognized by the defendant, however, the Ninth Circuit has recently rejected the invitation to adopt a lower standard. *See Garrison*, 759 F.3d at 1015 n.18; *Burrell v. Colvin*, 775 F.3d 1133, 1136–37 (9th Cir. 2014); *Brown-Hunter v. Colvin*, 798 F.3d 749, 755 (9th Cir. 2015). Binding precedent therefore forecloses defendant's argument.

If step four demonstrates that the claimant cannot do the work he or she did in the past, the burden shifts to the Commissioner to establish, in step five, that the claimant can perform jobs available in the national economy. 20 C.F.R. § 416.960(c). There, the ALJ must consider the claimant's RFC, age, education, and past work experience to determine whether the claimant can do other work. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007). The ALJ will typically reference "the grids," under which a finding of disability may be directed, and also consider the testimony of a vocational expert. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). Where the grids do not direct a finding of disability, the ALJ must identify other occupations that the claimant can perform and which are available in significant numbers in the claimant's region or in several regions of the United States. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 416.960(c). If the ALJ establishes that the claimant's RFC and transferable skills allow him or her to perform other occupations, he or she is not disabled. 20 C.F.R. § 416.966. Conversely, if the ALJ concludes that the claimant cannot adjust to any other work, he or she is disabled and entitled to benefits. *Id*. § 416.920(g).

**B.     The ALJ followed the five-step process and concluded that plaintiff is not disabled.**

In reviewing plaintiff's claim for benefits, the ALJ followed the five-step process described above. (AR 30–37.) The ALJ determined that plaintiff had not engaged in substantial gainful activity since August 23, 2011, the application date, and has chronic obstructive pulmonary disease ("COPD"), early stage chronic kidney disease, left elbow tendinitis, depression, and anxiety/post-traumatic stress disorder. (*Id.* at 30.) At step two the ALJ found each to be a severe impairment under the applicable regulations. (*Id.*) In contrast, to the extent plaintiff also suffered from hypertension, chest pain, headaches, and back pain, the record indicated these impairments were not medically determinable, were not severe, or would not last at least twelve months. (*Id.* at 30–31.)

The ALJ next considered whether plaintiff's severe impairments met or medically equaled any impairment on the List of Impairments. (*Id.* at 31–32.) She focused in particular on listing 3.02 for plaintiff's COPD and listings 12.04 and 12.06 for plaintiff's mental impairments, and

1  concluded that the evidence of record did not satisfy the criteria for any listing. (*Id.*) A finding of
2  disability was not, therefore, directed at step three.

3        The ALJ proceeded to step four and made several findings. First, the ALJ concluded that
4  plaintiff's RFC permitted light work as defined in 20 C.F.R. § 416.967(b), except that she cannot
5  crawl or climb ladders, ropes, or scaffolds; she cannot perform "more than frequent" couching,
6  stooping, or fingering bilaterally; she must avoid concentrated exposure to extreme temperatures
7  and moderate exposure to pulmonary irritants; she cannot interact with the public more than
8  occasionally; and she must be in a low-stress job with no more than occasional changes in setting.
9  (*Id.* at 32.) Second, the ALJ found that while plaintiff's medically determinable impairments
10 could reasonably be expected to cause her alleged symptoms, the intensity, persistence, and
11 limiting effects of the symptoms were not credible to the extent plaintiff alleged. (*Id.* at 33.)
12 Finally, based on evidence in the record and the testimony of a vocational expert, the ALJ
13 determined that plaintiff is capable of performing her past relevant work as a housekeeper. (*Id.* at
14 35.)

15       A claimant is deemed not disabled at step for if able to do her past relevant work. 20
16 C.F.R. § 416.960(b)(3). Nevertheless, the ALJ proceeded to step five and found in the alternative
17 that plaintiff could perform additional jobs present in significant numbers in the national
18 economy: an office helper, of which there are 95,000 jobs nationally, and mail clerk, of which
19 there are 131,000 jobs nationally. (AR 36–37.)

20 **C.    The ALJ permissibly discounted plaintiff's subjective pain allegations.**

21       Plaintiff first challenges the ALJ's credibility determination, contending that the ALJ
22 failed to articulate legally sufficient reasons for rejecting plaintiff's subjective pain and
23 limitations testimony. (#12 at 8.) Noting first that the ALJ did not reject plaintiff's testimony
24 altogether, as plaintiff suggests, the court turns to the four reasons the ALJ found her testimony
25 not fully credible: (1) the objective medical evidence does not strongly support plaintiff's
26 allegations of disabling symptoms or limitations; (2) plaintiff's mental health symptoms appear
27 "mostly stable" in the treatment records; (3) plaintiff's poor work history prior to the onset date
28 undermines the contention that she is not working due to disability; (4) the disparity between

7

plaintiff's reported symptoms and her daily activities; and (5) plaintiff continued to smoke cigarettes, despite alleging breathing issues and an inability to pay for treatment. (AR 33–35.)

First, a lack of strong support from objective medical evidence is a "clear and convincing" reason to discredit plaintiff's testimony. Notably, plaintiff does not point to any errors in the ALJ's analysis of the evidence itself. Instead, she rests her argument on the principle that an adverse credibility finding "is always legally insufficient" if based on inconsistency with the objective medical evidence. (#14 at 5–6.) Plaintiff quotes this court's precedent and the applicable regulations to support her argument (*id.* at 5), but misses their meaning. It is well established that while a lack of support from the objective medical evidence cannot be the *sole* basis for discounting a claimant's credibility, the ALJ may properly consider it among other factors. *Burch*, 400 F.3d at 681; 20 C.F.R. § 416.929(c)(2); SSR 95-5P, 1995 WL 670415 (Oct. 31, 1995). Here, the ALJ identified four additional reasons that plaintiff's testimony was not fully credible; so long as those reasons are sound, there is no error.

Second, the ALJ permissibly cited reports that plaintiff's mental health was "mostly stable," despite her allegations of disabling depression and anxiety. (AR 35.) Plaintiff contends the treatment records, when read as a whole, do not undermine her testimony. (#12 at 10–11.) In support, plaintiff explains that treatment records from December 2012 and January and February 2013 noted her anxiety, depression and panic, and that she had begun to hear voices telling her "your [sic] a loser and there is no point in being here since you are never going to get the help you need." (*Id.* at 11; AR 458–59.)

Plaintiff's argument lacks merit. An ALJ may properly consider the inconsistencies between the medical evidence and a claimant's subjective complaints in assessing the claimant's credibility, *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007), provided that she does not "ignor[e] competent evidence in the record that suggests an opposite result," *Rollins*, 261 F.3d at 859. The ALJ not only discussed the treatment notes cited by plaintiff, but also other relevant records dating back to September 2011. (AR 34–35.) In doing so, the ALJ outlined evidence that supported and conflicted with plaintiff's allegations. Furthermore, the ALJ accorded little weight to the opinions of state agency psychological consultants expressly because they had not seen the

more recent evidence of plaintiff's worsening anxiety, an increased response, and episodic depression. (*Id.* at 35.) In comparison, plaintiff takes a narrow view of the record. For example, plaintiff fails to address or explain treatment notes that were cited by defendant and which reported that plaintiff's mood, affect, behavior, and judgment were normal (*see, e.g.*, *id.* at 272, 273, 275, 277, 278, 515), her thoughts were logical (*id.* at 459, 463, 465), she was not responding to internal stimuli (*id.* at 459, 463, 465), and that her medication was helping (*id.* at 461–63, 465). Because the ALJ specifically identified and explained the evidence undermining plaintiff's allegations, she met her burden under the "clear and convincing" standard.

The ALJ's third reason for discounting plaintiff's credibility was also permissible. Plaintiff's "sporadic and low earnings levels prior to the alleged onset date," the ALJ observed, did "not reflect a long-term demonstrated motivation to work full-time, [and] detract[ed] from the credibility of her allegations that she is not working full-time because she is disabled." (*Id.* at 33.) Plaintiff acknowledges that a claimant's work history is relevant to credibility (#12 at 8, 11), but argues that the ALJ's consideration of plaintiff's work history was in this case improper because her "severe emotional problems were long standing in nature . . . ." (#14 at 6).

Once again, plaintiff's argument is unpersuasive. The regulations inform claimants that the Commissioner "will consider all of the evidence presented, including information about your prior work record . . . ." 20 C.F.R. § 416.929(c)(3). A claimant's failed work attempts after the onset of a disability may support allegations of disabling pain. *Lingenfelter*, 504 F.3d at 1038–39. Conversely, a "spotty" work history *prior* to claiming disability tends to undermine the claimant's credibility regarding his or her inability to work. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Substantial evidence in the record supports the ALJ's characterization of plaintiff's employment prior to August 15, 2011, her alleged disability onset date, as "sporadic." (AR 195, 176.) Furthermore, the ALJ's interpretation is a reasonable one. Where an ALJ's credibility finding is reasonable and supported by substantial evidence, it is not the role of the court to second guess it. *Rollins*, 261 F.3d at 857.

Fourth, the ALJ permissibly discounted plaintiff's credibility based on her daily activities. Plaintiff maintains that her ability to engage in activities which require "only a minimal physical

1  effort" or are short in duration does not translate into a capacity to perform work on a sustained
2  basis. (#14 at 8.) Accordingly, her activities should not have affected her credibility.
3      The ALJ was not required to make an express finding in her credibility analysis that
4  plaintiff's activities equate the exertion needed for light work. Rather, "even where [a claimant's]
5  activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's
6  testimony to the extent that they contradict claims of a totally disabling impairment." *Molina*,
7  674 F.3d at 1113. Here, the ALJ found that plaintiff's assertions of constant pain, nightmares,
8  social anxiety, and other functional limitations were inconsistent with her daily activities. (AR
9  33.) The finding is supported by the record. It was reasonable, for example, for the ALJ to
10 conclude that plaintiff's ability to take care of personal needs, do light household chores, go to
11 her medical appointments and therapy sessions, socialize with her children, and take public
12 transportation belied her claim that she could not concentrate or understand and complete tasks.
13 (*Id.*) Plaintiff "need not vegetate in a dark room in order to be eligible for benefits," *Molina*, 674
14 F.3d at 1112–13 (internal quotation omitted), but the ALJ reasonably concluded that plaintiff's
15 activities undermined her assertions of disabling limitations.
16     Finally, the ALJ found that plaintiff's ongoing use of tobacco undermined her contentions
17 that she had problems breathing and could not afford medical care. (*Id.* at 34.) Plaintiff
18 maintains that her smoking habit should not have adversely impacted her credibility given that
19 cigarettes are readily available and highly addictive. (#12 at 9.) Furthermore, plaintiff allegedly
20 made a pact with her husband to quit smoking the day after her hearing, and acquired nicotine
21 patches to help. (#14 at 7.)
22     Although defendant argues that nicotine's addictive nature is an "unconvincing"
23 explanation, the Ninth Circuit's reasoning in *Bray v. Commissioner of Social Security*
24 *Administration* is instructive. The *Bray* claimant smoked cigarettes until shortly before her
25 hearing, despite alleging debilitating shortness of breath and acute chemical sensitivity. 554 F.3d
26 1219, 1227 (9th Cir. 2009). Like the ALJ here, the *Bray* ALJ reasoned that if claimant's ailments
27 were as severe as alleged, she would have quit smoking. *Id.* The Ninth Circuit was not so sure.
28 "It is certainly possible that [claimant] was so addicted to cigarettes that she continued smoking

1  even in the face of debilitating [impairments]." *Id.* Nevertheless, because the ALJ presented
2  alternative bases for discounting the claimant's testimony, any reliance on the claimant's
3  continued smoking was, if erroneous, harmless. *Id.* (citing *Batson v. Comm'r of Soc. Sec. Admin*,
4  359 F.3d 1190, 1197 (9th Cir. 2004) (finding harmless error where the record did not support one
5  of the ALJ's several reasons for an adverse credibility finding)). Accordingly, the court finds that
6  even if plaintiff's smoking habit is not a clear and convincing reason to discount her testimony,
7  the other independent reasons discussed above are sufficient to support the ALJ's credibility
8  determination.

### D. The ALJ did not err in her treatment of Dr. Mito's medical opinion.

10  Plaintiff also challenges the ALJ's step-four evaluation of the medical opinion evidence.
11  In concluding that plaintiff's RFC permitted light work, the ALJ accorded "no weight" to a letter
12  plaintiff's treating physician, Dr. Mito, wrote in November 2010. (AR 33.) Dr. Mito opined that
13  plaintiff "is currently unable to hod [sic] a job due to chronic back pain and orthopedic problems.
14  Due to her lack of insurance she is not able to afford the cost of a specialist which would be
15  required to address her problems." (*Id.* at 267.) The ALJ described the letter as conclusory, with
16  no referenced objective findings, and noted that x-rays completed ten days later were within
17  normal limits. (*Id.* at 33.) Plaintiff disputes the finding, and argues that the ALJ should have
18  credited Dr. Mito's opinion. (#12 at 14.) The court disagrees.

19  An ALJ may encounter medical opinions from three types of physicians: treating,
20  examining, and non-examining. *Garrison*, 759 F.3d at 1012. As a general rule, an ALJ gives
21  greater weight to the opinion of a treating physician. *Id.* Moreover, a treating physician's
22  opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic
23  techniques and is not inconsistent with the other substantial evidence in [a claimant's] case
24  record," is entitled to controlling weight. 20 C.F.R. § 416.927(c)(2); *Ghanim v. Colvin*, 763 F.3d
25  1154, 1160 (9th Cir. 2014). Where the treating physician's opinion is contradicted by other
26  evidence in the record, an ALJ may reject or discount it "by providing specific and legitimate
27  reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012.

Thus, an ALJ is not bound by the conclusions of any particular medical provider. Reviewing courts have rejected the opinions of treating physicians based on conflicts between the physician's opinion and clinical findings, treatment notes, claimant's daily activities, and other medical opinions. *See, e.g.*, *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (rejecting opinion that was inconsistent with the medical records and based on claimant's self-reporting); *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 692–93 (9th Cir. 2009) (rejecting opinion that conflicted with physician's treatment notes); *Rollins*, 261 F.3d at 856 (rejecting opinion that was inconsistent with claimant's daily activities and conservative course of treatment). In addition, an ALJ need not accept a medical opinion that "is brief, conclusory, and inadequately supported by clinical findings." *Thomas*, 278 F.3d at 957.

The ALJ properly rejected Dr. Mito's two-sentence opinion. As the ALJ explained, the opinion is inconsistent with x-rays taken less than two weeks later. (AR 33.) In addition, Dr. Mito failed to explain the extent of plaintiff's "chronic back and orthopedic problems," describe any specific limitations resulting therefrom, or identify the clinical findings upon which his opinion was based. (*See id.* at 267.) Plaintiff's citations to medical records noting her joint pain, tingling, arthralgias, and tennis elbow do not rectify Dr. Mito's omission, particularly given that many of the same records show normal range of motion and reflexes. (#12 at 14; #14 at 9; *see also* AR 273, 275, 331, 333.)

In the alternative, plaintiff maintains that the ALJ erred by not developing the record further with regard to the bases of Dr. Mito's opinion or by requesting an additional consultative examination. (#12 at 14–15.) In Social Security cases, the ALJ has an "independent 'duty to fully and fairly develop the record,'" even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273,1288 (9th Cir. 1996)). When triggered, an ALJ may "discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open . . . ." *Id.* However, the duty to develop the record is not absolute. Because the claimant bears the burden of proving disability up through step four, it is triggered only when evidence in the record is ambiguous or inadequate, so

as to preclude a proper evaluation. *Mayes v. Massanari*, 276 F.3d 453, 459–60 (9th Cir. 2001); *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (holding that the duty to develop the record was triggered where the evidence suggested "obvious vicissitudes" in the claimant's health).

Relying on 20 C.F.R. § 416.912(e), plaintiff argues that the ALJ's duty to develop was triggered when she found that Dr. Mito's opinion was conclusory and unsupported by the record. (#12 at 14–15.) This court's precedent holds otherwise. Section 416.912(e) does provide that the ALJ will recontact a claimant's treating physician to resolve certain ambiguities or conflicts in medical source reports. In *Thomas v. Barnhart*, however, the Ninth Circuit clarified that the requirement only applies "when the evidence from the treating medical source is inadequate to make a determination as to the claimant's disability." 278 F.3d at 958; *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005) (holding that the ALJ had no duty to recontact a claimant's doctor where there was adequate evidence in the record to make a disability determination). The record as a whole—and not the particular deficiencies of Dr. Mito's opinion—is therefore determinative. Because the record was not ambiguous or inadequate so as to preclude a disability determination, there was no need for the ALJ to ask Dr. Mito for clarification or to request an additional consultation.

### IV.  CONCLUSION

In light of the record and arguments, the court concludes that substantial evidence in the record supports the ALJ's determination of nondisability. The ALJ did not err in her assessment of plaintiff's credibility or Dr. Mito's medical opinion. Consequently, the court recommends that plaintiff's motion for remand or reversal (#12) be denied and that defendant's cross-motion to affirm (#13) be granted.

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Local Rule IB 3-2, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

### V. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that plaintiff's motion for remand or reversal (#12) be **DENIED** and defendant's cross-motion to affirm (#13) be **GRANTED**;

**IT IS FURTHER RECOMMENDED** that the Clerk **ENTER JUDGMENT** and close this case.

**DATED**: November 4, 2015.

_____
**UNITED STATES MAGISTRATE JUDGE**